# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 04-1882

RECEIVED
BY MAIL
AUG 2 2 2005
CLERK, US DIST. COURT
ST. PAUL, MN

United States of America, *
*
Appellee, *
* Appeal from the United States
v. * District Court for the
* District of Minnesota.
Alfred James Clark, *
* CR 02-160 JNE/JGL
Appellant. *

Submitted: December 15, 2004
Filed: May 26, 2005

Before WOLLMAN, LAY, and COLLOTON, Circuit Judges.

WOLLMAN, Circuit Judge.

Alfred James Clark appeals from his conviction on charges of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). He also appeals from the 180-month sentence imposed by the district court,[1] contending that he should be resentenced in light of Blakely v. Washington, 124 S. Ct. 2531 (2004). We affirm.[2]

[1] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

[2] Clark filed a pro se brief, making several allegations related to the arguments set forth by his counsel. It is not our practice to consider pro se briefs filed by a party

SCANNED
AUG 2 2 2005
U.S. DISTRICT COURT ST. PAUL

I.

The St. Paul police responded to a series of 911 calls made from Clark's apartment. In December 2001, the first call was made by Loretha Cager, the daughter of Sherry Clark (Sherry), Clark's wife. Clark had severely beaten Sherry, had pointed a gun at her head and threatened her, and had fired a round at the floor. Ms. Cager reported the domestic violence and stated that the man involved might still be armed. Clark was arrested and held on state charges, but was released on bond when Sherry bailed him out and signed an affidavit denying that he had assaulted her. In March 2002, Sherry called 911, stating that Clark was again threatening her, despite the no-contact order in place against him. When the police arrived, they noticed that the apartment was in disarray but that nobody was home. An hour later, Sherry called again from the apartment, stating that Clark had destroyed the apartment and threatened her, and relating that he had fired a gun at her several months prior. Upon their arrival, Sherry admitted the responding officers and gave them consent to search the apartment. She also searched for the gun Clark had used to threaten her in December, which she had previously hidden in the entertainment center. When she was unable to find it, she led the officers into the master bedroom and directed them to the attic closet, stating that Clark often hid things in the closet. One of the officers searched the closet and found a sawed off shotgun and a handgun in a closed duffle bag. Noticing that neither was the gun she was looking for, Sherry resumed her search of the entertainment center and found a handgun, which she gave to the officers.

Clark was charged in a four-count indictment. Counts one and two charged him with being a felon in possession of ammunition and a handgun in violation of 18 U.S.C. 922(g)(1). Counts three and four involved his possession of the sawed-off shotgun. Clark filed several pretrial motions, including a motion to suppress the

---

who is represented by counsel. United States v. Cole, 262 F.3d 704, 707 n.3 (8th Cir. 2001). In any event, there is no merit in any of the issues Clark raises, and thus we need not discuss them further.

evidence found in the attic closet because, he argued, Sherry did not have the authority to consent to the search. A magistrate judge[3] recommended that the motion to suppress be denied because he found "no indication that [Clark] had exclusive use of the closet or that Ms. Clark did not have access to, or control over, the space." Report and Recommendation of July 1, 2002, at 9. The district court adopted the recommendation and entered an order denying the motion. D.Ct. Order of Aug. 1, 2002.

On the first day of trial, jury selection proceeded in usual course, with each party exercising peremptory strikes. The government struck six men and one woman; the defendant struck nine women and two men. The empaneled jury was composed of six men and six women, with a seventh man as the alternate. After the selected jurors' names had been read into the record, the remaining members of the jury pool excused, and the jury given preliminary instructions, defense counsel raised a gender-based Batson challenge. See Batson v. Kentucky, 476 U.S. 79 (1986). The following morning, the district court solicited comments from both sides related to the Batson challenge. It did not require the government to attempt to justify its strikes. Rather, the court noted the "practical problem" that the issue had not been raised until the remaining jurors had been dismissed, commented that the jury was in fact balanced, and proceeded to trial with the then-empaneled jury.

The jury returned a guilty verdict on counts 1 and 2, but could not reach a verdict on counts 3 and 4. After a series of communications between the court and the jurors, the district court dismissed counts 3 and 4 without prejudice and accepted the partial verdict.

[3] The Honorable Jonathan Lebedoff, Chief United States Magistrate Judge for the District of Minnesota.

Following numerous delays and several changes of counsel, Clark was sentenced on April 7, 2004. Applying the United States Sentencing Guidelines Manual (U.S.S.G.), the district court established Clark's base offense level as 24 in light of his prior convictions. U.S.S.G. § 2K2.1(a)(2) (2001). It applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for possession of a firearm "in connection with another felony offense," in this case the assault on Sherry Clark. The district court also applied a two-level enhancement for obstruction of justice. U.S.S.G. § 3C1.1(a). In light of Clark's criminal history category of V, the resulting guidelines range was 151 to 188 months. The district court sentenced Clark to 180 months' imprisonment (120 months on count 1 and 60 months on count 2, to be served consecutively), three years of supervised release, and a special assessment of $200.

## II.

### A.

Clark first argues that the district court improperly rejected his gender-based Batson challenge to the prosecution's peremptory strikes. A gender-based peremptory strike resting on impermissible stereotypes constitutes a violation of the Constitution's equal protection clause. J.E.B. v. Ala. ex rel. T.B., 511 U.S. 127, 140 n.11 (1994). A timely raised challenge contending that a strike was based on race or gender requires the district court to apply a three-part burden-shifting test to determine if the strike violates the equal protection clause. U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc., 320 F.3d 809, 812 (8th Cir. 2003). Such a challenge is untimely, however, if it is not "made at the latest before the venire is dismissed and before the trial commences." United States v. Parham, 16 F.3d 844, 847 (8th Cir. 1994).

Clark's counsel did not raise the Batson challenge until after the venire had been dismissed, as noted by the district court's statement that it "didn't hear about the issue until [it] had already let the other jurors go." Accordingly, the motion in this case was untimely and Clark has waived the challenge.

**B.**

Clark next contends that he was denied his right to be present at all stages of his trial, a right that is grounded in the confrontation clause of the Sixth Amendment, Blackwell v. Brewer, 562 F.2d 596, 599 (8th Cir. 1977), in the due process clause of the Fifth and Fourteenth Amendments, United States v. Gunter, 631 F.2d 583, 589 (8th Cir. 1980), and in Rule 43 of the Federal Rules of Criminal Procedure. The defendant bears the burden to show that he was absent during a particular stage of the trial. United States v. Leisure, 377 F.3d 910, 915 (8th Cir. 2004), vacated and remanded, 125 S. Ct. 1065 (2005) (remanded for reconsideration of an unrelated sentencing issue in light of United States v. Booker, 125 S. Ct. 738 (2005)). Clark was absent during two meetings between the judge and trial counsel in which jury notes were read and discussed and during an in-chambers conference and brief hearing regarding a note from an individual juror. Although Clark's brief implies that he may also have been absent when the jury reported that it had not reached a unanimous verdict and when an Allen charge was given, see Allen v. United States, 164 U.S. 492 (1896), the government counters that because Clark was present earlier the same afternoon in the courtroom and the transcript did not indicate that he had departed, he was very likely present and had at the very least failed to prove absence. Govt. Brief at 44.

Rule 43 provides that the defendant's presence is required at:

> (1) the initial appearance, the initial arraignment, and the plea;
> (2) every trial stage, including jury impanelment and the return of the verdict; and
> (3) sentencing.

Fed. R. Crim. P. 43(a). The defendant's presence is not required, however, when the "proceeding involves only a conference or hearing on a question of law." Fed. R. Crim. P. 43(b)(3). We have held that Rule 43(b)(3) does not require the defendant's presence at a chambers conference held to determine a jury's request for more

instructions. United States v. Parker, 836 F.2d 1080, 1087 (8th Cir. 1987); see also Gunter, 631 F.2d at 589 (characterizing an in-chambers meeting "about the additional identification evidence which the prosecution sought to introduce" as "a conference upon a question of law."); Leisure, 377 F.3d at 915 (finding that discussions of certain jury questions presented only questions of law). Accordingly, we conclude that no violation of Rule 43 occurred when Clark was absent from the discussions concerning the district court's response to the questions from the jury. Each of these discussions involved legal questions regarding the manner in which the jury was to be instructed, and the defendant was ably represented therein by his attorney. See Parker, 836 F.2d at 1084.

## C.

Clark also appeals from the denial of his pretrial motion to suppress the firearms that officers retrieved from their search of the attic closet. He argues that his wife did not have authority to consent to a search of the closet. We review the facts supporting the district court's denial of the motion to suppress for clear error and review its legal conclusions *de novo*. United States v. Oates, 173 F.3d 651, 656 (8th Cir. 1999).

The Fourth Amendment does not prohibit entry into a person's home when voluntary consent has been obtained, either from the person whose property is searched or from someone with common authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). In assessing the reasonableness of a search based on consent, we ask "whether the facts available would have justified a reasonable officer in the belief that the consenting party had authority over the premises." United States v. Czeck, 105 F.3d 1235, 1239 (8th Cir. 1997). The officer's conclusion that the consenting individual had authority to consent need not always be correct, but must always be reasonable. Rodriguez, 497 U.S. at 185-86.

It was reasonable for the officers to believe that Sherry had authority to consent to the search of the attic closet. The house belonged to Sherry and Clark, and the

unlocked closet was attached to the bedroom they shared. See United States v. Moran, 214 F.3d 950, 951-52 (8th Cir. 2000). The items inside the closet were not clearly labeled or specifically identified as belonging only to Clark. See id.; Czeck, 105 F.3d at 1239 (noting that everything in the room except the toolbox, which the officers obtained a warrant to search, appeared to belong to the person consenting). We agree with the magistrate judge that Sherry's statement that Clark hid things in the closet did not establish that she lacked access to the space or that Clark had exclusive access to it. See Report and Recommendation of July 1, 2002, at 9.

**D.**

Finally, Clark argues that the sentencing enhancements that the district court applied under the sentencing guidelines for obstruction of justice, U.S.S.G. § 3C1.1(A), and possession of a firearm while committing a felony assault, U.S.S.G. § 2K2.1(b)(1)(A), were based on facts found by the district court in violation of the Sixth Amendment.

United States v. Booker, 125 S. Ct. 738 (2005), decided in the wake of Blakely, 124 S. Ct. 2531, established that it is unconstitutional for the district court to impose enhancements under a mandatory federal sentencing guidelines scheme based on facts not established by a plea of guilty or a jury verdict. Booker, 125 S. Ct. at 750, 756. As a remedy for the constitutional error, the Court replaced the mandatory scheme with an advisory one by excising two statutory provisions. Id. at 764. Because Clark first raised a Sixth Amendment Booker-related claim on appeal, we review for plain error. Id. at 769. We examine the error using the four-part test of United States v. Olano, 507 U.S. 725, 732 (1993), as described in United States v. Pirani, No. 03-2871 (8th Cir. Apr. 29, 2005) (en banc). We ask whether there is (1) error (2) that is plain and (3) that affects substantial rights such that (4) "the fairness, integrity, or public reputation of judicial proceedings" is affected. Olano, 507 U.S. at 732. We have determined that the constitutional error, in light of Booker, "arose from the combination of the enhancement and a mandatory Guidelines regime." Pirani, slip op. at 9 (emphasis in original). Such error is clearly present here, but it is a closer

question whether the error affected Clark's substantial rights. Because the Supreme Court chose to excise the error by "retaining enhancements based upon judge-found facts but applying them in an advisory guidelines regime," id., we will find that a defendant's substantial rights are affected if he can "show a 'reasonable probability,' based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." Id. at 11.

Clark was sentenced to 180 months' imprisonment, which falls within the applicable range of 151 to 188 months. The district court stated that it agreed with the calculation in the presentence investigation report,[4] and it did not indicate a desire to further reduce the sentence below the applicable guidelines range. Sentencing Tr. at 37. The district court instead stated that Clark "represents a substantial danger to the community" and concluded that "a sentence toward the bottom end of this guideline range is just not going to adequately take into account the punishment that is necessary for him, and the protection of the community when he gets out." Id. at 40. Accordingly, because the record as a whole does not establish a reasonable probability that Clark would have received a more favorable sentence under an advisory guidelines scheme, he has not met his burden of demonstrating prejudicial error under Olano, and thus he is not entitled to be resentenced. See Pirani, slip op. at 13.

The conviction and sentence are affirmed.

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

[4] The district court applied a two-level enhancement because it found that Clark had obstructed justice by urging his wife to sign a false affidavit while he was in federal custody prior to trial. It also applied a four-level enhancement because it found that Clark possessed and used the firearm while committing terroristic threats and second degree assault. The total offense level was therefore 30, with a criminal history category of V, resulting in a sentencing range of 151 to 188 months.